STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ALDO BATTLE AND SERGIO BATTLE, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted January 8, 1979—Decided January 30, 1979.

522

524

Before Judges CONFORD, PRESSLER and KING.

*Messrs. Meyner, Landis & Verdon,* attorneys for appellant Aldo Battle; *Messrs. Brown, Vogelman & Brown,* attorneys for appellant Sergio Battle (*Messrs. William P. Verdon* and *Raymond M. Brown,* on the brief).

*Mr. John J. Degnan,* Attorney General of New Jersey, attorney for respondent (*Mr. Kenneth N. Lipstein,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

CONFORD, P. J. A. D., Retired (temporarily assigned). This appeal involves the construction of *N. J. S. A.* 2A:151–32 ("Section 32") which makes it a crime to give, sell, receive or purchase a pistol or revolver unless the receiver or purchaser has first secured a permit to purchase. If the weapon is a rifle or shotgun, the receiver or purchaser must have first obtained and exhibited a firearms purchaser identification card ("identification card"). To be carefully dis-

tinguished is *N. J. S. A.* 2A:151–41 ("Section 41") which prohibits the carrying or possession in any public place or public area of a pistol or revolver without having obtained a permit to carry it or a rifle or shotgun without having first obtained an identification card. There are other detailed statutory provisions regulating the issuance of permits to receive or purchase, of permits to carry, and of identification cards. For a comprehensive discussion of these statutes see *State v. Riley,* 69 *N. J.* 217 (1976).

These appellants and two others were indicted for violations of Sections 32 and 41 and also of *N. J. S. A.* 2A:151–56 ("Section 56") which prohibits the carrying of a firearm with intent to use it unlawfully against another. There were numerous counts corresponding to the different firearms found in defendants' possession.

These prosecutions arose out of the following facts. Shortly after midnight, on the morning of December 30, 1974, defendants Aldo, Sergio and Jose Battle along with Michael Dopaso were arrested by members of the Union City Police Department for possession of a variety of firearms contrary to the aforecited statutes. A citizen walking his dog had seen several men late at night tucking guns inside their clothing as they ran out of the Ice House housing project. One of the individuals, a heavyset man in a brown leather coat, was seen carrying a shotgun which he was wrapping in a green blanket.

The citizen, one Anderson, known to the police as a former special police officer, described the incident to foot patrolman Pisani who summoned help with his "walkie-talkie." The police shortly thereafter stopped a car, one of whose occupants was a large man wearing a brown leather coat. Officer Messina approached the car from the driver's side while Officers Shelton and Mella approached from the other side. As Messina drew near he recognized the broad-backed occupant as Jose Battle ("Jose"), whom he knew, and said, "Oh, they're okay." Within seconds, however, Officer Shelton had opened the door on the other side, seen a shotgun and

yelled. At the hearing on a motion by defendants to suppress, Shelton testified that as he approached the car, the window was rolled down. Inside, he could see a green blanket or cloth lying across the lap of the occupant in the front passenger seat. He started to open the front door and as he did so the blanket started dropping down. Shelton reached through the window to grab the blanket and, as it slipped off, the barrel of a shotgun came into view.

After Shelton saw the shotgun and yelled, the officers arrested the occupants and searched them and the car. A number of firearms were found in addition to the shotgun. Defendant Sergio Battle ("Sergio") was unarmed but police found a 9-mm. automatic pistol on the floor of the car where he had been sitting. Aldo Battle ("Aldo") was found in possession of a .38-caliber revolver, 12-gauge shotgun shells and 38-caliber shells. The other defendants also held weapons. Because Aldo was shown to possess the necessary identification card required to carry a rifle or shotgun, two counts of possessing the shotgun initially filed against him were dismissed.

Sergio took the stand. He admitted the presence of the weapons but alleged that they belonged to other persons who had murdered another brother the week before and who had threatened Jose. He said that there was no green blanket and that all the weapons except the shotgun, which belonged to Aldo, had been abandoned on the sidewalk by the other persons. He and his companions, he testified, were bringing the guns to the police and a Mr. Diaz was to have called police headquarters to say they were coming. Instead the police stopped them, and before Jose, who knew one of the policemen, could explain their actions, the shotgun was seen, the parties arrested and the other weapons discovered.

Defendants were found guilty of most of the charges by the jury but at sentencing the judge merged their findings and entered judgments of conviction, as to the present appellants, for violation of Sections 41, 32 and 56 in relation to an automatic Browning pistol (first, second and third

counts). For the violation of Section 41 these defendants were sentenced to serve 18 months in the county penitentiary, 12 months thereof suspended, two years probation and a $250 fine. The same sentences, except for the fine, were imposed for each of the violations of Sections 32 and 56, concurrent with the sentence in respect of the Section 41 violation.

## I

Defendants assert they were improperly convicted of violation of Section 32 as the indictments thereon did not charge commission of a crime. A motion to dismiss those counts of the indictment based on Section 32 at the end of the State's case was denied. We conclude it should have been granted.

The section reads as follows insofar as concerns a pistol:

A. No person shall sell, give, transfer, assign or otherwise dispose of, nor receive, purchase or otherwise acquire a pistol or revolver unless the purchaser, assignee, donee, receiver or holder is licensed as a dealer under this chapter or has first secured a permit to purchase a pistol or revolver as provided by this article.

The count of the indictment (Second) pertinent to violation of Section 32 as to the Browning pistol reads:

### SECOND COUNT:

And further PRESENT, That on the date, place and in the jurisdiction set forth in the First Count herein, the said ALDO BATTLE, JOSE MIGUEL BATTLE, SERGIO RICARDO BATTLE and MICHAEL DOPASO a/k/a MIGUEL, unlawfully carried in a vehicle, to wit, an automobile, a certain firearm, to wit, a 9mm Luger Caliber Browning Automatic pistol, without first having obtained the requisite permit to purchase, acquire, obtain or receive as a gift, contrary to the provisions of *N. J. S.* 2A:151-32 * * *.

It is apparent that the indictment does not charge the receipt or purchase by defendants of the pistol, as specified by Section 32, but only its carrying. However the only statutory prohibition of carrying a pistol is that contained in Section 41, which so far as here pertinent reads:

Except as hereinafter provided, any person who carries, holds or possesses in any automobile, carriage, motor cycle or other vehicle, or on or about his clothes or person, or otherwise in his possession, or in his possession or under his control in any public place or public area:

a. A pistol or revolver without first having obtained a permit to carry the same in accordance with the provisions of this chapter * * * is guilty of a high misdemeanor.

These defendants were indicted for violation of Section 41 in respect of the Browning pistol in the following language (First Count):

ALDO BATTLE, JOSE MIGUEL BATTLE, SERGIO RICARDO BATTLE and MICHAEL DOPAZO a/k/a MIGUEL ON OR ABOUT THE 30th DAY OF December, 1974, in the City of Union City IN THE COUNTY OF HUDSON AFORESAID AND WITHIN THE JURISDICTION OF THIS COURT, unlawfully carried in a vehicle, to wit, an automobile, a certain firearm, to wit, a 9mm Luger Caliber Browning Automatic pistol, without first having obtained the requisite permit to carry the same, contrary to the provisions of *N. J. S.* 2A:151–41 * * *.

Reading these statutes *in pari materia,* and in context, it is clear that the *carrying* or *mere possession* of a pistol was intended to be proscribed only for doing so without obtaining a permit to do so, as expressly stated in Section 41. Failure to obtain a permit to *purchase* a pistol was a condition of criminality only when there was a *purchase* or other form of *receipt* or transfer of title to a pistol. As the Second Count of the indictment does not charge such conduct, it does not charge a crime.

The conviction of defendants on the Second Count will be reversed.

## II

Defendants contend that their conviction of violation of Section 56 is vitiated by the trial court's reading to the jury of the language of *N. J. S. A.* 2A:151–57 ("Section 57"). That section reads as follows:

The possession by any person other than a public officer or one having a permit for the same, of any weapon specified in section 2A:151–56 of this title, concealed or furtively carried on the person, is presumptive evidence of carrying, or concealing, or possessing, with intent to use the same in violation of that section.

██ As Section 56 prohibits the carrying of a weapon "with intent to use unlawfully against another," defendants contend that the effect of the statutory presumption is to permit their conviction of intent to use unlawfully against another without any evidence thereof beyond the mere fact of carrying the weapon on the person. We agree with defendants' position that the decision of the Supreme Court in *State v. Humphreys*, 54 *N. J.* 406 (1969), invalidates a conviction where the court instructs the jury as to the existence of a presumption of an inculpating fact, the effect thereof being improperly to transfer the burden of proof from the State to the defendant. In *Humphreys* defendant was convicted of carrying weapons in an automobile without having obtained a permit, contrary to *N. J. S. A.* 2A:151–7. In charging the jury the judge read the statutory provision which included the language, "The presence of a firearm * * * in a vehicle is presumptive evidence of possession by all persons occupying the vehicle at the time." The court found that the language of presumption served as a legislative reminder to the trial court that the presence of a weapon might give rise to an inference of possession by the occupants of the car but when read to a jury unfairly relieved the State of part of its traditional burdens of proof and persuasion. 54 *N. J.* at 413, 414.

██ We cannot distinguish the presumption charged the jury in the present case from that held improperly read to the jury in *Humphreys* insofar as concerns the effect of the transfer from the State to the defendant of the burden of proof with respect to the critical fact of intent to use the weapon unlawfully.

██ The State argues that the charge concerning presumption was not prejudicial to these defendants as it was not

read to the jury in connection with the definition of the crime proscribed by Section 56 in relation to the charge of carrying the Browning pistol. There was one reading of the presumption language in reference to a count of the indictment implicating another defendant, and another in relation to the count concerning Aldo Battle's possession of a .38 Colt revolver. We do not believe that these circumstances affect the prejudiciality of the charge. Regardless of which defendant and which weapon were the subject of the objectionable charge, the jury were still being instructed that the mere possession or carrying of a weapon was presumptive evidence that it was being carried with intent to use it unlawfully. Since these defendants were being charged with that offense, albeit with respect to the Browning pistol, there was a substantial potentiality that the jury would understand and apply the presumption to all violations of Section 56 with which these defendants were charged.

## III

Defendants contend there was error in the denial at trial of their motion for suppression of the evidence seized in the car. We do not agree.

 The information furnished to the police before they stopped the car in which defendants were riding, while it did not constitute probable cause to believe that seizable objects were contained in that vehicle, nevertheless created sufficient suspicion of the possibility of criminal activity by the suspects, who had been reliably described to the police, as to warrant an investigatory detention of them and their vehicle when spotted by the police. See *Adams v. Williams*, 407 *U. S.* 143, 92 *S. Ct.* 1921, 32 *L. Ed.* 2d 612 (1972); *Terry v. Ohio*, 392 *U. S.* 1, 88 *S. Ct.* 1868, 20 *L. Ed.* 2d 889 (1968). The motion judge was entitled to credit the version of the police that the car door was not opened until the police had observed the green blanket within which, so they had been told, persons resembling these defendants were

carrying a rifle. At that point suspicion ripened into probable cause and, since this was a readily movable vehicle, *State v. Ercolano,* 79 *N. J.* 25 (1979), the police were entitled to search the car for the suspected weapon. *Adams v. Williams, supra,* is additional authority for a precautionary foray into the vehicle for police protective purposes under circumstances such as those here existing.

Defendants seek to overcome the effect of the evidence relied upon by the State by pointing out that at a probable cause hearing Officer Shelton's testimony varied from that given at the motion to suppress in testifying that he started to open the door before he noticed the green blanket. However, at trial the officer reaffirmed the version of his testimony given at the motion to suppress.

■ These variations in the testimonial account of the critical occurrences are not material, as the testimony at the hearing of the motion to suppress is conclusive as to the facts, saving evidence of such egregious falsification of the facts as might entitle a court, in the interests of justice, to reopen the ruling on the motion to suppress. We find no such situation present here. The denial of the motion to suppress will be affirmed.

Judgment reversed on the convictions of violation of Section 32 (second count). The second count of the indictment is ordered dismissed. Judgment reversed on the convictions on the third count. Judgment affirmed on the convictions on the first count.